UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL DELLUTRI,

                    Plaintiff,

    -v-

VILLAGE OF ELMSFORD,

                  Defendant.

Case No. 10-CV-01212 (KMK)

OPINION AND ORDER

Appearances:

Mitchell Ian Weingarden, Esq.
Law Offices of Mitchell I. Weingarden, PLLC
White Plains, New York
*Counsel for Plaintiff*

Kiera Meehan, Esq.
Steven C. Stern, Esq.
Sokoloff Stern LLP
Westbury, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

    Plaintiff Michael Dellutri ("Plaintiff") has filed a Second Amended Complaint following

removal of this action by Defendant Village of Elmsford ("Defendant" or "Elmsford") from New

York Supreme Court.  Plaintiff alleges that officials of Elmsford engaged in various acts relating

to Plaintiff's family dwelling in Elmsford, which constituted federal constitutional deprivations

in violation of the Due Process and Equal Protection clauses of the Fourteenth Amendment, as

well as state law torts of malicious prosecution, abuse of process, and prima facie tort.[1]

---

[1] Plaintiff's Second Amended Complaint also seemingly includes a claim under 42
U.S.C. § 1983 ("Section 1983") for constitutional violations.

Defendant has moved to dismiss Plaintiff's Second Amended Complaint ("SAC") in its entirety. For the reasons stated herein, the motion is granted with respect to the federal claims, supplemental jurisdiction over the state law claims is declined, and the Second Amended Complaint is dismissed in its entirety.

I.  Background

A. Facts

For purposes of deciding the instant motion to dismiss, the Court accepts as true the allegations contained in Plaintiff's Second Amended Complaint.

Plaintiff is a longtime owner of real property located at 15 Paulding Street in Elmsford, New York, which contains a second kitchen and bath.  (SAC ¶ 1.)  Elmsford's Building Department issued Plaintiff a "Certificate of Compliance with Zoning and Building Regulations, dated on or about October 17, 1984," permitting Plaintiff's property to have a second kitchen and bath and describing it as a "two[-]family dwelling."[2]  (Id. ¶ 6.)  In February 2005, Plaintiff alleges that an Elmsford Building Inspector, Antonio Capicotto, and an Assistant Building Inspector, Martin Rogers, served him with a notice of violation charging unlawful operation of the premises as a two-family residence.  (Id. ¶ 4.)  Plaintiff also claims that Defendant served upon him an "order to cease renting the basement unit" which resulted in lost rent.  (Id. ¶ 14.)  Plaintiff does not specify the precise time that this order was served, or which Village official issued it.

---

[2]  The Second Amended Complaint contains no other specific information about the certificate, including, for example, where the second kitchen and bath could be located within the premises.

More than a year after the notice of violation, the Village Attorney of Elmsford, served

Plaintiff with an appearance ticket on July 17, 2006, to appear and answer the charges in the

Elmsford Justice Court on August 9, 2006.  (*Id.* ¶ 7.)  Following a subsequent trial before

Elmsford Village Judge Richard Leone, Plaintiff was convicted on October 18, 2006, (*id.* ¶ 11;

Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") 1) for violations under both

the New York Property Maintenance Code and the Village of Elmsford Code.  *See People v.

Dellutri*, No. 2007-CR-1591, 2008 WL 4814911, at *1 (N.Y. App. Term Oct. 30, 2008).

Plaintiff's conviction was then reversed by the New York Supreme Court on October 30, 2008.

*Id.*  The Supreme Court held that the New York State Code charge was inapplicable, and that

Plaintiff "was improperly charged and convicted" under it.  *Id.*  On the Village Code violation,

the Supreme Court noted that during the trial the building inspector testified that he had been

aware of both an original certificate of occupancy for Plaintiff's property, as a one-family

dwelling, and a later conversion of the property to a two-family dwelling based upon a second

dwelling unit in the basement.  *Id.*  However, the building inspector suspected another illegal

dwelling unit over the garage of Plaintiff's property, in effect making the premises a three-family

dwelling.  *Id.*  The Supreme Court, noting that the building inspector had not actually visited this

unit, held that there was no "valid line of reasoning and permissible inferences from which a

rational trier of fact could have found the elements of the offenses proved beyond a reasonable

doubt," and reversed Plaintiff's conviction.  *Id.* (alterations and internal quotation marks

omitted).

Plaintiff alleges that the building inspectors were "actually or constructively aware" of

Plaintiff's 1984 compliance certificate, that the Village Attorney "knew or should have known"

the charges were false, and that Judge Leone was not only aware of the compliance certificate, but had actually assisted in its procurement on behalf of Plaintiff. (SAC ¶¶ 6, 8, 13-14.)

B. Procedural History

Plaintiff originally commenced this action in state court. In the original complaint, Plaintiff named the Village of Elmsford as a defendant, along with Antonio Capicotto and Martin Rogers, who were an Elmsford Building Inspector and Assistant Building Inspector, respectively, and who were sued in their official capacities. Defendant removed the action to this Court on February 17, 2010, pursuant to 28 U.S.C. §§ 1331 and 1441(b). (Dkt. No. 1.) Plaintiff has since amended his complaint twice and stipulated to the dismissal of Capicotto and Rogers as defendants, with prejudice. (Dkt. Nos. 1, 6, 10-12.) In the Second Amended Complaint, Plaintiff's claims are for damages arising from: (1) "Abuse of [p]rocess/[m]alicious and [u]nlawful [p]rosecution," (2) violations of procedural and substantive due process, (3) violations of "Plaintiff's right to equal protection," and (4) prima facie tort under state law. (SAC ¶¶ 21-40.) Plaintiff seeks damages of at least $100,000 plus interest, costs, punitive damages, and attorneys' fees. (*Id.* ¶ 43.)

Defendant moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) On May 3, 2012, the Court issued an order for supplemental briefing on the question of why all claims against Elmsford should not be deemed to have been dismissed by virtue of the dismissal with prejudice of Capicotto and Rogers. (Dkt. No. 23.) Supplemental briefing was submitted by the Parties on May 14, 2012. (Dkt. Nos. 24, 25.) The Court held oral argument on July 24, 2012.

## II. Discussion

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzales v. Caballero*, 572 F. Supp. 2d. 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)). In adjudicating a 12(b)(6) motion, a court must confine its consideration to "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference," and facts of which the Court may take judicial notice. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A complaint cannot rest solely on conduct consistent with behavior that raises a right to relief; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Federal Claims Against Elmsford

Plaintiff makes multiple claims against Elmsford, presumably asserted pursuant to 42 U.S.C. § 1983, including violations of substantive due process, procedural due process, equal protection, malicious prosecution, and abuse of process.[3] Plaintiff's claims are based upon the alleged actions of "the Village of Elmsford Judge" who presided over Plaintiff's trial, the Elmsford Building Inspector and Assistant Building Inspector who served a notice of violation upon Plaintiff, and the Village Attorney who served Plaintiff with an appearance ticket and subsequently prosecuted Plaintiff. (SAC ¶¶ 6, 8, 26, 33-34.) As described below, these claims fail on multiple grounds.

### 1. Res Judicata

As noted above, prior to the current motion to dismiss, Plaintiff stipulated to the dismissal of Capicotto and Rogers as defendants, with prejudice. (Dkt. No. 10.) Noting that an "official capacity suit against a public servant is treated as one against the governmental entity itself," *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007), the Court ordered Plaintiff, on

---

[3] Plaintiff's Second Amended Complaint is not wholly clear. Plaintiff's second and third causes of action are lumped together in the Second Amended Complaint, and allege violations of Plaintiff's "[c]onstitutional [r]ight to [p]rocedural and [s]ubstantive [d]ue [p]rocess," and Plaintiff's "right to equal protection under the United States Constitution," without further description of their legal basis. (SAC ¶¶ 27-36.) Plaintiff's first cause of action for "[a]buse of process/[m]alicious and [u]nlawful [p]rosecution," states only that "Defendants (sic) acted in utter disregard" of Plaintiff's "rights under the Federal and State Constitutions and the laws, codes, rules and regulations applicable to the Village of Elmsford." (*Id.* ¶ 24.) Likewise, Plaintiff's Second Amended Complaint repeatedly refers to Capicotto and Rogers as "Defendants," or to "Defendants," even though Plaintiff previously stipulated to their dismissal (Dkt. No. 11), and the Second Amended Complaint lists the Village of Elmsford as the only remaining defendant. (SAC ¶¶ 4, 6, 8, 9, 14, 16, 22-25, 27, 29, 32-34, 38-43.)

May 3, 2012, to submit supplemental briefing on the question of "why all claims against Elmsford should not be deemed to have been dismissed with prejudice by virtue of the voluntary dismissal with prejudice of Capicotto and Rogers." (Dkt. 23 (citing *Muhammad v. City of Peekskill*, 06-CV-1899, 2008 WL 4452355, at *3 (S.D.N.Y. Sept. 30, 2008)).) Plaintiff's supplemental filing argues that Elmsford's "liability is not solely based on [the] acts" of Capicotto and Rogers, and that, therefore, even if the acts attributable to those two individuals are dismissed "the remaining claims should stand." (Dkt. No. 25.)

This argument, however, does not address the issue of res judicata.[4] As this Court explained at length in *Muhammad*:

> "[A] stipulation dismissing plaintiff's 'action' with prejudice must be read to have dismissed *all* claims," which precludes Plaintiff later raising "those claims that would have been decided had the first action been fully litigated." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). This is true with respect to "'all relevant issues which could have been but were not raised and litigated in the suit.'" *Samuels* [*v. N. Tel., Inc.*, 942 F.2d 834, 836 (2d Cir. 1991)] (quoting *Nemaizer*, 793 F.2d at 61) . . . . *Id.* at 837 ("[A] dismissal *with prejudice* was a risky choice if future litigation was contemplated, since it would wipe out all claims that *could* have been asserted in the dismissed suit." (emphasis in original)); *see also Resources N.E. of Long Island, Inc. v. Town of Babylon*, 28 F. Supp. 2d 786, 792 (E.D.N.Y. 1998) (applying *Samuels* to find that once a claim was brought to its final conclusion, "all other claims arising out of the same transaction or series of transactions became barred, even if . . . based on different theories, seek[ing] different remedies, and alleg[ing] different facts").

> Further, Plaintiff is barred from making claims against the same party and those in privity with that party. *See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995) (stating that privity precludes relitigation of a claim against a new defendant with "sufficiently close

---

[4] Plaintiff seems to misunderstand the Court's inquiry, arguing that "there is no attempt to add claims which could have been asserted earlier," and that all the "acts and claims" relating to other municipal officials "were contained in the complaint at the time of the (voluntary) dismissal." (Dkt. No. 25.) This was not the point of the Court's Order. Rather, the Court was asking for input as to the legal impact of the dismissal of the only Elmsford employees who were sued in their official capacity.

relationship to the original"); *see also Vets N., Inc. v. Libutti*, No. 01-CV-7773, 2003 WL 21542554, at *11 (E.D.N.Y. Apr. 21, 2003) ("[C]ontemporary courts have broadly construed the concept of privity, far beyond its literal and historic meaning, to include any situation in which the 'relationship between the parties' is 'sufficiently close' to supply preclusion." (quoting *Nabisco, Inc. v. Amtech Int'l, Inc.*, No. 95-CV-9699, 2000 WL 35854, at *6 (S.D.N.Y. Jan.18, 2000))). . . . As then-District Judge Parker noted, in language directly applicable here, Defendants County of Westchester and DiFiore are "entitled to *res judicata* because government officials sued in their official capacities are generally considered to be in privity with the governmental entity that they serve." *Waldman* [*v. Village of Kiryas Joel*, 39 F. Supp. 2d 370, 382 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000)]; *see also Stancuna v. Sherman*, [563 F. Supp. 2d 349, 353] (D. Conn. 2008) (stating that public officials sued in official capacity are in privity with the entities that employ them); *O'Connor v. Pierson*, 482 F. Supp. 2d 228, 231 (D. Conn. 2007) (same); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007) (same).

*Muhammad*, 2008 WL 4452355, at *4 (emphasis in original).

The analysis in *Muhammad*, which the Court cited in its Order, applies to the instant case. In the first place, res judicata is typically available to a newly named defendant when the facts in an earlier case are the same and were known to Plaintiff. Thus, even if Elmsford had been added as a defendant after Capicotto and Rogers were dismissed, it still would be able to invoke res judicata. *See Wilson v. Ltd. Brands, Inc.*, No. 08-CV-3431, 2009 WL 1069165, at *3 & n.4 (S.D.N.Y. Apr. 17, 2009) (noting that res judicata applied where a defendant in a second action had a "sufficiently close relationship" to a defendant in a prior action and "both defendants were known" to the plaintiff when she filed the earlier lawsuit); *Waldman*, 39 F. Supp. 2d at 381 ("Res judicata is available to a newly named defendant with a close or significant relationship to a defendant previously sued, when the claims in the new action are essentially the same as those in the prior action and the defendant's existence and participation in the relevant events was known to the plaintiff."). Here, the impetus for applying res judicata is even stronger because Capicotto and Rogers are in direct privity with Elmsford. Throughout this

8

litigation, the suit against Capicotto and Rogers has, in reality, been a suit against Elmsford.  In fact, the Second Amended Complaint contains no allegations that Capicotto and Rogers acted outside their official capacity, and every version of Plaintiff's complaints state that "Capicotto and Rogers may be referred to herein as the Village of Elmsford Building Department."  (Compl. ¶ 3; First Amended Compl. ¶ 4; SAC ¶ 3.)  As such, Plaintiff's voluntary dismissal with prejudice against the building inspectors, sued in their official capacities, for res judicata purposes, was a dismissal of the action against Elmsford itself.

To this end, res judicata bars Plaintiff's claims even if he asserts new legal theories of liability following the dismissal of the building inspectors.  *See Waldman*, 207 F.3d at 110 (noting the "well-established rule" that a "plaintiff cannot avoid the effects of res judicata by splitting his claim into various suits, based on different legal theories" (internal quotation marks omitted)); *TechnoMarine S.A. v. Giftports, Inc.*, No. 11-CV-9643, 2012 WL 3964734, at *5 (S.D.N.Y. Sept. 10, 2012) ("New legal theories do not amount to a new cause of action so as to defeat the doctrine of res judicata."); *Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03-CV-6450, 2005 WL 121746, at *7 (S.D.N.Y. Jan. 21, 2005) (same), *adopted in relevant part by* 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005).  Thus, even if Plaintiff correctly speculates that individuals other than Capicotto and Rogers may have committed some of the complained-of conduct, it does not overcome the effect of voluntary dismissal with prejudice.  Accordingly, the Court dismisses the entirety of Plaintiff's federal claims on the basis of res judicata.

### 2.  Timeliness of Claims

All of Plaintiff's federal claims, except for malicious prosecution, are also time-barred. While "Section 1983 provides a federal cause of action . . . federal law looks to the law of the State in which the cause of action arose" for the statute of limitations.  *Wallace v. Kato*, 549 U.S.

384, 387 (2007); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In section 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions.'" (alterations omitted) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989))). "Accordingly, New York's three-year statute of limitations for 'an action to recover damages for a personal injury,' N.Y.C.P.L.R. § 214(5), governs section 1983 actions in New York." *Taylor v. City of N.Y. Dep't. of Hous. Preservation & Dev.*, No. 08-CV-150, 2008 WL 2485410, at *3 (S.D.N.Y. June 19, 2008) (quoting *Ormiston*, 117 F.3d at 71).[5]

Although the statute of limitations period is governed by state law, "federal law governs the question of when a Section 1983 claim accrues." *Rene v. Jablonski*, No. 08-CV-3968, 2009 WL 2524865, at *5 (E.D.N.Y. Aug. 17, 2009) (citing *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003)). "Under federal law, a cause of action generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D.*, 334 F.3d at 221 (internal quotation marks omitted); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (noting that federal law determines when a Section 1983 cause of action accrues, and that it begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action" (internal quotation marks omitted)); *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (applying rule of accrual to claims brought pursuant to Section 1983).

---

[5] "There is a split of authority as to whether an abuse of process claim is subject to New York's one-year statute of limitations for certain intentional torts enumerated in N.Y. C.P.L.R. § 215(3) or a three-year statute of limitations for torts involving injury to persons or property under N.Y. C.P.L.R. § 214(5)." *Romag Fasteners, Inc. v. Bauer*, No. 11-CV-3181, 2011 WL 5513380, at *8 (S.D.N.Y. Nov. 9, 2011). As Defendant has not argued otherwise, the Court will assume that the three-year statute of limitations applies.

The Parties dispute when the cause of action accrued.  Plaintiff argues that the date his conviction was reversed, October 30, 2008, is the relevant date.  (Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem.") 8, 16.)  Defendant argues that Plaintiff was convicted on October 18, 2006 and that by this date, if not sooner, Plaintiff was fully aware of the injury that formed the basis of his abuse of process, due process, and equal protection claims.  (Def.'s Mem. 4; Reply Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply") 2-3.)  In analogous circumstances, the Second Circuit and federal district courts in New York have consistently held that claims such as those at issue here accrue at the time of conviction or earlier.  *See Ormiston*, 117 F.3d at 71 (noting that "[i]n cases applying the *Singleton* rule, the date of arrest has been used as the accrual date for any subsequent action under section 1983"); *Singleton*, 632 F.2d at 191 (holding that assault and false arrest claims began to accrue at the time of arrest, rather than at the termination of the prosecution); *Keitt v. City of New York*, No. 09-CV-5663, 2010 WL 3466175, at *6 (S.D.N.Y. Aug. 9, 2010) (holding that a plaintiff's "federal claims all accrued . . . [on the date] when he was allegedly racially profiled, falsely arrested, imprisoned, and denied medical care"); *Remigio v. Kelly*, No. 04-CV-1877, 2005 WL 1950138, at *5 (S.D.N.Y. Aug. 12, 2005) ("Under the *Singleton* rule, the statute of limitations accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action,' such as 'when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.'" (quoting *Singleton*, 632 F.2d at 191-92)); *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) ("Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion—typically at arrest—against the plaintiff.").  All of Plaintiff's alleged injuries (other than malicious prosecution) occurred prior to, or in the course of, his trial.  Consequently, he was clearly aware of them by the time of his conviction.  Thus, the statute of

limitations for these claims would have expired – at the latest – three years after the date of his conviction, which was on October 18, 2006. Because Plaintiff did not initiate this action until more than three years later, on January 27, 2010, it is untimely. (Decl. of Kiera J. Meehan in Supp. of Def.'s Mot. to Dismiss ("Meehan Decl."), Ex. B.)

A very limited exception to this application of the *Singleton* rule exists under the continuing violations doctrine, which "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997); *see also Bissinger v. City of New York*, No. 06-CV-2325, 2007 WL 2826756, at *5 (S.D.N.Y. Sept. 24, 2007) (same). "The continuing violation doctrine is generally viewed with disfavor in the Second Circuit and should be applied only on a showing of compelling circumstances." *Bissinger*, 2007 WL 2826756, at *5 (collecting cases); *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at *10 n.2 (S.D.N.Y. Dec. 15, 2004) (collecting cases); *cf. Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (noting that "when a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run, and the later awareness that the actionable wrong was also part of a conspiracy does not expand the statutory time limit"). Plaintiff has not here alleged any compelling circumstances which would merit application of the continuing violations doctrine. *See, e.g.*, *Remigio*, 2005 WL 1950138, at *8 ("Courts have found compelling circumstances where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is a[n] express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." (internal quotation marks and alteration omitted)). Aside from allegations related to his malicious prosecution claim, Plaintiff

was aware of the alleged harms Defendant was inflicting upon him at the time they occurred prior to his conviction.[6]  Moreover, Plaintiff makes no allegations remotely suggesting that Defendant's alleged misconduct involved other wrongful acts related to anything other than the one prosecution.  Accordingly, Plaintiff's abuse of process, due process, and equal protection claims are time-barred.

### 3.  *Monell* Liability for Section 1983 Claims

Plaintiff's § 1983 claims also fail to state a claim for municipal liability.  In order for Plaintiff to prevail on any of his § 1983 claims against Elmsford, he must satisfy the requirements for municipal liability, as set forth in *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978), and its progeny.  It is well-settled that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a

---

[6]  Defendant concedes that Plaintiff's malicious prosecution claim is not time-barred. (Def.'s Mem. 4.)

constitutional right.").  In other words, a municipality may not be held liable under Section 1983 "by application of the doctrine of *respondeat superior*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)).  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 Fed. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (plurality opinion)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally

understood (*i.e.*, a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Newton*, 566 F. Supp. 2d at 271 (footnote omitted).

"A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker . . . ." *Id.* Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik*, 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" (internal quotation marks omitted)).

### a.  Imputed Liability of Municipal Actors

Plaintiff's "[Second] Amended Complaint lacks *any* factual allegations demonstrating the existence of an officially-adopted policy or custom [of Elmsford] that caused Plaintiff injury and a direct and deliberate causal connection between that policy or custom and the violation of Plaintiff's federally protected rights." *Joe v. Moe*, No. 10-CV-4417, 2011 WL 2416882, at *5 (S.D.N.Y. June 1, 2011) (alterations and internal quotation marks omitted); *see also Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) (noting that Plaintiff bears the burden of establishing as a matter of law that the conduct of a given official represents an official policy). Rather,

Plaintiff's request for relief arises solely from the allegation that certain municipal employees – the Building Inspectors, Village Attorney, and Judge Leone – violated Plaintiff's rights. However, as described above, in the absence of a formal municipal policy or a widespread custom, Elmsford may not be held liable for these actions simply because they were committed by actors who were its employees. *See Brown*, 520 U.S. at 403 (noting that *Monell* found that a municipality "may not be held liable under § 1983 solely because it employs a tortfeasor"); *Pembaur*, 475 U.S. at 478 (noting that *Monell* held that a municipality is not liable by application of respondeat superior); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130-31 (2d Cir. 2004) (affirming a grant of summary judgment where plaintiff was unable to show that a municipal failure to train caused two incidents of excessive force by police officers); *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003) ("[A] municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." (internal quotation marks omitted)); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) ("A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior.").

Plaintiff's only remaining avenue for relief under *Monell* lies in demonstrating that one or more of these municipal actors exercised final policymaking authority while committing the purported actions. *See Praprotnik*, 485 U.S. at 123 (noting that a municipality may also be subject to § 1983 liability for acts of its officials who have final policymaking authority in the area in which the action was taken); *Pembaur*, 475 U.S. at 482–83 (plurality opinion) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy

respecting such activity before the municipality can be held liable." (citation omitted)); *Jeffes*, 208 F.3d at 57 (noting that the mere fact that an employee has been "granted discretion in the performance of his [or her] duties" does not suffice as final policymaking authority imputing municipal liability). "[W]hether a particular official has final policymaking authority is a question of state law." *Praprotnik*, 485 U.S. at 123 (internal quotation marks omitted). The Court analyzes each municipal actor's authority in turn, starting with Judge Leone.

"The Second Circuit has not addressed the policymaking authority of judges; however, other circuits have determined that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a Section 1983 claim based solely on the actions of its judges." *Bliven v. Hunt*, 478 F. Supp. 2d 332, 337 & n.2 (E.D.N.Y. 2007) (citing cases from the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits), *aff'd*, 579 F.3d 204 (2d Cir. 2009); *Rodriguez v. City of New York*, No. 02-CV-8203, 2004 WL 444089, at *4 (S.D.N.Y. Mar. 10, 2004) (concluding that the view of other circuit courts "that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a section 1983 claim based solely on the actions of its judges . . . is sound and persuasive"). In addition, multiple district courts within the Second Circuit have determined that under New York law, village and similar judges are not considered village policymakers for the purposes of evaluating a *Monell* claim. *See Berry v. Vill. of Millbrook*, 815 F. Supp. 2d 711, 718-19 (S.D.N.Y. 2011) (holding that the acts of a village judge could not be imputed to a municipality); *Szymaszek v. Mahar*, No. 06-CV-719, 2008 WL 4518613, at *8 (N.D.N.Y. Sept. 29, 2008) (holding that the City of Troy "cannot be liable through any actions or inactions" by its former city court judge); *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 218 (S.D.N.Y. 2005) (noting that "a

municipality is not liable, vicariously, for an official act of one of its judges"). The Court agrees with these courts and concludes that Judge Leone is not a policymaker for Elmsford.[7]

Plaintiff also alleges that Capicotto and Rogers, the building inspector and assistant building inspector, respectively, served him with a Notice of Violation charging Plaintiff with unlawfully operating the premises as a two family residence, (SAC ¶ 4) when they "knew or should have known" that the charges were false, (*id*. ¶ 8). Whether a building inspector is considered a municipal policymaker under *Monell* is a question of state and municipal law. *See Sullivan v. Town of Salem*, 805 F.2d 81, 86, 87 (2d Cir. 1986) (noting that whether a building official's refusal to consider plaintiff's request for certificates of occupancy could fairly be said to represent official town policy was a Connecticut state law question to be determined by the district court on remand); *Town of Orangetown v. Magee*, 665 N.E.2d 1061, 1067 (N.Y. 1996) ("Whether the Building Inspector's revocation constituted a 'final decision' of the Town of Orangetown is a matter to be determined by examining the relevant local laws. States have broad discretion to determine the form of local government and the distribution of power in one locality may be quite different from that of another."). Accordingly, courts which have considered this question have examined the relevant state or local law, to determine the scope of

---

[7] Municipal judges, moreover, are typically State employees, over whom the municipality does not have control. *See Rodriguez*, 2004 WL 444089, at *4 (concluding that because a municipal judge is an employee of the State and not the municipality, "even if the judge's actions had amounted to that of a policymaker, the [municipality] would not be liable under *Monell*"); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 536 (N.D.N.Y. 1997) (holding that a Town Judge is not a municipal policymaker because "the jurisdiction of his court as well as the requirements of his job are prescribed by state law," and "his decisions are not final because they are appealable to higher courts within the state court system" and, "[t]herefore, . . . the Town is not responsible for [the] Judge['s] conduct when he acts in his judicial capacity, as he did in the present case"). Thus, there is no viable claim that Elmsford is legally liable for the decisions of the village judge who presided over Plaintiff's case.

a building inspector's authority. *See, e.g.*, *Kern v. Layne*, No. 06-CV-13490, 2009 WL 4884149, at *1 (S.D.N.Y. Dec. 16, 2009) (holding that a building inspector was a final municipal policymaker "based upon the scope of authority vested in the Building Inspector under the Village Code with respect to building permits and certificates of occupancy"); *New Creation Fellowship of Buffalo v. Town of Cheektowaga*, No. 99-CV-460A, 2004 WL 1498190, at *63-64 (W.D.N.Y. July 2, 2004) (holding the Town's Building Inspector to be a final policymaker for *Monell* purposes where the inspector had been delegated "sole responsibility for enforcement of the Tree Preservation Ordinance," even though the inspector's actions were appealable to the Town Board), *aff'd on other grounds*, 164 Fed. App'x 5 (2d Cir. 2005) (summary order); *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 335 n.2 (S.D.N.Y. 2001) (noting that a Town Supervisor who merely had a duty to report complaints of alleged building code violations was not a final policymaker where the building department conducted subsequent independent investigations); *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 298 (S.D.N.Y. 1999) (holding that a building inspector who was not "empowered to write the building code, set policy for enforcement of the code, or to bring about prosecutions under the code" could not be a policymaker for purposes of imputing municipal liability), *aff'd*, 225 F.3d 646 (2d Cir. 2000) (unpublished opinion); *Magee*, 665 N.E.2d at 1067-68 (holding that a Town Building Inspector was the final decisionmaker for purposes of § 1983 liability where the inspector was the sole official, under Town policy, with the authority to revoke building permits and had exercised that "legal authority for political reasons at the direction of the Town Supervisor").

In the current case, Plaintiff has not alleged that the building inspectors exercised such "final authority" under municipal law. Indeed, Plaintiff only alleges that the inspector and assistant inspector issued a notice of violation. Without more, this does not demonstrate that

these individuals exercised final policymaking authority. *See Emanuele*, 143 F. Supp. 2d at 335 & n.2 (noting that a Town Supervisor who merely had a duty to report complaints of alleged building code violations was not a final policymaker); *Rodriguez*, 71 F. Supp. 2d at 298 (holding that a building inspector was not a policymaker for purposes of imputing municipal liability where the inspector lacked relevant authority under the building code).

Even if the building inspectors did exercise final authority, however, Plaintiff's claims against Elmsford based upon their actions would still be barred due to res judicata. As already discussed, Plaintiff's voluntary dismissal against Capicotto and Rogers constituted a dismissal against Elmsford. The actions of Capicotto and Rogers cannot now be imputed to Elmsford.

Finally, Plaintiff seems to base liability upon the actions of the Village Attorney for serving an appearance ticket for Plaintiff to appear in the Village Justice Court and subsequently prosecuting Plaintiff. The Court will assume, without deciding, that the Village Attorney was acting as a municipal policymaker in prosecuting Plaintiff and address claims for municipal liability based upon the Village Attorney's actions on their merits. *See Norton v. Town of Islip*, No. 04-CV-3079, 2009 WL 804702, at *28 (E.D.N.Y. Mar. 27, 2009) (declining to dismiss municipal liability claim based in part on decision of Town Attorney's office to prosecute property owners to enforce changes to certificates of occupancy without providing notice and an opportunity to be heard), *rev'd on other grounds by* 378 Fed. App'x 85, 90 (2d Cir. 2010); *cf. Frank Sloup & Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 124 n.2 (E.D.N.Y. 2010) (noting that a statement by a Deputy Town Attorney at an Article 78 proceeding could be an "[a]n alternative theory" that would be "sufficient to create liability for the Town"); *Mitchell v. Town of Southampton*, 238 F.R.D. 368, 370 (E.D.N.Y. Dec. 6, 2006) (granting discovery request for "job descriptions and setting of qualifications for" new Town Attorneys, Assistant Town

Attorneys, or Deputy Town Attorneys, due to relevance to the "disputed issue" of whether an Assistant Town Attorney was a policymaker). Thus, the question is whether Plaintiff's allegations about the Village Attorney are sufficient to state a malicious prosecution claim.

### b. Malicious Prosecution

Although Section 1983 provides plaintiffs with a federal cause of action, the elements of the underlying malicious prosecution claim are taken from state law. *See Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994). In order to state a viable claim for malicious prosecution in New York, a plaintiff must show: (1) the initiation and continuation of criminal process against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) the lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). Furthermore, a plaintiff must also show that there was a Fourth Amendment "seizure" to prevail upon a Section 1983 malicious prosecution claim. *See Albright v. Oliver*, 510 U.S. 266, 269-71 (1994) (plurality opinion) (holding that a claim of prosecution without probable cause is properly analyzed under the Fourth Amendment); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) ("[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." (internal quotations marks omitted)); *Mangino v. Vill. of Patchogue*, 739 F. Supp. 2d 205, 227 (E.D.N.Y. 2010) (same); *Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (same).

Plaintiff has met the second element required for malicious prosecution by offering evidence of a favorable result (a reversal on insufficiency grounds), *Dellutri*, 2008 WL 4814911, at *1, that indicates his innocence as a matter of law. *See Russell v. Smith*, 68 F.3d 33, 36 (2d

Cir. 1995) (noting that a favorable termination of a case occurs only when there is a decision on the merits or a final disposition to indicate the accused is not guilty).[8] Likewise, if the pleaded facts of the Second Amended Complaint are taken to be true, Elmsford similarly lacked probable cause to initiate the criminal proceeding, fulfilling the third element required for malicious prosecution.

Defendant contests the fourth element – actual malice – describing Plaintiff's allegations as "speculation of malice as a motive." (Def.'s Mem.12.) The law in the Second Circuit is clear, however, that a "lack of probable cause generally creates an inference of malice," *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003), as does a prosecution pursued with "reckless disregard of the rights of the plaintiff," *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (internal quotation marks omitted). Thus, the facts as alleged could plausibly give rise to an inference of malice on either of these indirect theories.

The remaining dispute between the Parties is whether Plaintiff was seized for Fourth Amendment purposes. Defendant contends that the requisite Fourth Amendment seizure did not occur, arguing that service of the notice of violation and appearance ticket, coupled with the "mere requirement" of a court appearance, do not rise to the level of a constitutional seizure. (Def.'s Mem. 11.) Plaintiff alleges that in addition to the appearance ticket he was subject to a

---

[8] It is unclear from the Second Amended Complaint whether the offense with which Plaintiff was charged rises to the level of a "criminal proceeding" under state or municipal law sufficient to satisfy the first element of a malicious prosecution claim. *See Hary v. Dolan*, No. 08-CV-1611, 2010 WL 419404, at *4-5 (D. Conn. Jan. 29, 2010) (noting that whether a criminal proceeding was initiated or whether a defendant was merely punished for an "infraction" was determined by reference to Connecticut state law). Here, the Court will assume that Plaintiff was the subject of a criminal proceeding.

trial, implying an unspecified number of further court appearances, beyond the one required from his appearance ticket.

The Second Circuit has noted that a "plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of seizure." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (internal quotation marks omitted). Thus, for example, the Second Circuit has held that a defendant who was released post-arraignment, but ordered not to leave the state and required to make approximately eight court appearances while his criminal proceeding was pending, had shown "a seizure within the meaning of the Fourth Amendment." *Murphy v. Lynn,* 118 F.3d 938, 946 (2d Cir. 1997). Subsequent to *Murphy*, the Second Circuit has observed that "[i]n order to allege a cause of action for malicious prosecution *under § 1983*," a plaintiff "must assert, in addition to the elements of malicious prosecution under state law, that there was . . . a sufficient *post-arraignment* liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (second emphasis added) (citing *Murphy*, 118 F.3d at 944-46). Noting that "[i]n the wake of *Murphy*, the district courts in this Circuit have divided on whether a summons requiring a later court appearance—without further restraint—amounts to a Fourth Amendment seizure," the Second Circuit has recently clarified that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010).[9] However, the *Burg* court also noted that *Murphy*

_____

[9] Consistent with *Burg,* it seems beyond dispute that the building inspectors' issuance of the notice of violation and the Village Attorney's service of an appearance ticket do not, without more, constitute a seizure within the meaning of the Fourth Amendment. 591 F.3d at 98.

had involved eight appearances and observed that "[t]he number of appearances may bear upon whether there was a seizure." *Id.*

Lower courts have wrestled with quantifying the number of appearances necessary to constitute a seizure. Some courts have held that a criminal process involving multiple court appearances effects a seizure under the Fourth Amendment. *See, e.g.*, *Genia v. N.Y. State Troopers*, No. 03-CV-0870, 2007 WL 869594, at *14-16 (E.D.N.Y. Mar. 20, 2007) (finding a deprivation of liberty where plaintiff was required to "make multiple court appearances after the arraignment, up to and including the criminal trial"); *Kirton v. Hassel*, No. 96-CV-1371, 1998 WL 146701, at *6 (E.D.N.Y. Mar. 25, 1998) (noting "[i]t has been held that requiring a Plaintiff to make court appearances is a 'seizure' within the meaning of the Fourth Amendment"); *Sassower v. City of White Plains,* 992 F. Supp. 652, 656 (S.D.N.Y. 1998) (finding that where a plaintiff was required to appear in court on three occasions and "cut short" her travel, she had raised "a genuine issue of fact as to the deprivation of liberty element" of her malicious prosecution claim); *Willner v. Town of N. Hempstead*, 977 F. Supp. 182, 189 (E.D.N.Y. 1997) (finding a seizure "[a]lthough there are no allegations of an arrest or an otherwise physical detention" because plaintiff "was required to make court appearances").

However, the weight of district court authority in circumstances similar to those here – involving a plaintiff charged with non-felony offenses who was neither arraigned nor physically detained but who might have made a number of court appearances – counsels against finding a constitutional injury. *See Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *5-6 (S.D.N.Y. Sept. 30, 2011) (holding that a seizure had not occurred even where Plaintiffs "were required to appear in court on fifteen occasions" in response to non-felony appearance tickets); *McCart v. Vill. of Mount Morris*, No. 09-CV-6472, 2011 WL 3421505, at *10

(W.D.N.Y. Aug. 4, 2011) (finding no seizure where plaintiff was issued an appearance ticket following an arrest, but not otherwise restricted, and "appeared in court a couple of times" (internal quotation marks omitted)); *Johnston v. Port Auth. of N.Y. & N.J.*, No. 09-CV-4432, 2011 WL 3235760, at *7 (E.D.N.Y. July 28, 2011) (holding that a constitutional seizure had not occurred even though plaintiff had been required to appear on four separate occasions where that requirement was "not accompanied by burdensome conditions" (internal quotation marks omitted)); *Rotenberg v. Town of Mamaroneck*, No. 08-CV-4703, 2010 WL 3468051, at *3 (S.D.N.Y. Aug. 24, 2010) (applying *Burg* to conclude "that requiring plaintiffs to appear in court twice in connection with the summons—for an initial appearance and a one-day trial—is not a sufficient deprivation of liberty to rise to the level of a constitutional injury"); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 370 (S.D.N.Y. 2009) (finding that a seizure had not occurred where plaintiff had not been detained at any point after she had been "issued appearance tickets to appear in Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws" and had a civil jury trial on the alleged violations); *Thomas v. City of New York*, No. 05-CV-6449, 2008 WL 3456173, at *5 (S.D.N.Y. Aug. 12, 2008) ("Plaintiff's court appearances alone do not rise to the level of an infringement upon Plaintiff's Fourth Amendment protection.").

Plaintiff has not specified the number of court appearances he made in connection with his trial, nor has he alleged whether there were *any* restrictions on his travel or on his liberty in general.[10] Given the paucity of Plaintiff's allegations, the Court concludes that Plaintiff has not

---

[10] Citing *Murphy*, Plaintiff also urges the Court to find the "unlawful restraint on plaintiff's use of his property" sufficient to satisfy the requisite Fourth Amendment liberty deprivation for a Section 1983 malicious prosecution claim. (Pl.'s Mem. 21.) Plaintiff cites no precedent for such a finding. While Plaintiff is correct that *Murphy* established that "[t]he

alleged sufficient facts to establish that he was seized under the Fourth Amendment.

Accordingly, Plaintiff's federal malicious prosecution claim is dismissed.

### c. Abuse of Process

A malicious abuse of process claim lies where a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *See Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (alterations omitted) (internal quotation marks omitted). Plaintiff has not adequately pled the third element in his Amended Complaint, as he does not at all suggest a collateral objective sought by Defendant. Rather, Plaintiff seems to rest his claim upon Defendant's lack of probable cause in initiating a legal process against him. Even assuming that Defendant lacked probable cause, however, does not demonstrate that Defendant sought some collateral objective. *Id.* at 77 (holding that the district court "erred in relying on a lack of probable cause to infer that, in securing [plaintiff's] arrest, defendants acted with malice or with a collateral objective that was outside the legitimate ends of the legal process."); *cf. Reisner v. Stoller*, 51 F. Supp. 2d 430, 456 (S.D.N.Y. 1999) (noting that collateral objective element was satisfied where a defendant allegedly used an eviction warrant "in furtherance of [a] plot to steal [the plaintiff's] [p]remises"). Accordingly, Plaintiff's abuse of process claim is dismissed. *See Blair v. City of*

---

liberty deprivations regulated by the Fourth Amendment are not limited to physical detention," classifying a single restriction on land use – that Plaintiff was not to rent his basement – as a "seizure" seems too attenuated from even a generous reading of *Murphy*. Accordingly, the Court declines to view the alleged restraint on Plaintiff's ability to rent his basement as a Fourth Amendment deprivation and instead considers it in the more appropriate rubric of Plaintiff's due process claims. Moreover, this cause of action would be time-barred for the reasons described above.

*New York*, No. 03-CV-1485, 2009 WL 959547, at *10 (E.D.N.Y. Mar. 31, 2009) (granting

motion to dismiss a Section 1983 abuse of process claim where plaintiff failed to point to any

evidence that "g[a]ve rise to an inference of an illegitimate collateral objective"); *Coyle v. Coyle*,

302 F. Supp. 2d 3, 8-9 (E.D.N.Y. 2004) (granting motion to dismiss Section 1983 claims against

detective and a police officer where complaint did "not allege that [defendants] used the process

to obtain a collateral objective").

        4. Equal Protection

        The Equal Protection Clause of the Fourteenth Amendment requires the government to

treat similarly situated persons alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 439 (1985). A plaintiff, such as Dellutri, who does not claim to be a member of a

constitutionally protected class may bring an Equal Protection claim on one of two theories:

selective enforcement or "class of one." *See Cobb v. Pozzi*, 363 F.3d 89, 109–10 (2d Cir. 2004).

Both of these theories require a plaintiff to show differential treatment from other "similarly

situated" individuals. *See*, *e.g., Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d

Cir. 2010) ("class of one" (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per

curiam))); *Zahra v. Town of Southold*, 48 F.3d 674, 683-84 (2d Cir. 1995) (selective

enforcement).

        The totality of Plaintiff's allegations regarding his Equal Protection claim is a conclusory

assertion, without any detail, that Defendant differed in its "treatment to other similarly situated

property owners." (SAC ¶ 32.) Because this conclusory statement offers no details regarding

other similarly situated individuals, this claim is dismissed. *See Iqbal*, 556 U.S. at 678 (2009)

("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59

(2d Cir. 2010) (noting that plaintiffs failed to state viable equal protection claim where they merely alleged less favorable treatment than "similarly situated" persons); *Price v. Vill. of Westhampton Beach*, No. 11-CV-1811, 2012 WL 373338, at *4 (E.D.N.Y. Feb. 03, 2012) (dismissing plaintiff's equal protection claim where plaintiff did not sufficiently allege facts to show that defendants singled plaintiff out on the basis of his religion); *Parkash*, 2011 WL 5142669, at *8 (dismissing a selective enforcement equal protection claim where the complaint referenced "unspecified similarly situated persons without accompanying examples"). *See generally*, *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) ("[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient to state an equal protection claim." (alterations and internal quotation marks omitted)).

### 5. Due Process

Plaintiff also alleges substantive and procedural due process violations. These both fail as a matter of law.[11] "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trustees of the Vill. of Grand View New York*, 660 F.3d 612, 626 (2d Cir. 2011) (internal quotation marks omitted). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation

---

[11] As noted above, these claims also are time-barred.

marks and alteration omitted); *Velez v. Levy*, 401 F.3d 75, 93-94 (2d Cir. 2005) (noting that

actions which shock the conscience occur "largely in the context of excessive force claims" but

also unquestionably include other "malicious and sadistic abuses of power by government

officials, intended to oppress or to cause injury and designed for no legitimate government

purpose" (internal quotation marks omitted)); *Schultz v. Inc. Vill. of Bellport*, No. 08-CV-0930,

2010 WL 3924751, at *6 (E.D.N.Y. Sept. 30, 2010) (noting that the shock the conscience

standard "is not easily met; the plaintiff must show the government conduct was egregious and

outrageous, not merely incorrect or ill-advised." (quoting *Ferran v. Town of Nassau*, 471 F.3d

363, 369-70 (2d Cir. 2006)) (internal quotation marks omitted)).

Plaintiff seems to base his substantive due process claim upon two grounds: 1) his

malicious prosecution and abuse of process claims and, 2) a deprivation of a "property right in

the premises." (SAC ¶ 31.) As previously explained, the first rationale fails because Plaintiff

has not demonstrated a seizure under the Fourth Amendment. *See Albright*, 510 U.S. at 273

(holding that "[w]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these

claims").

Regarding the deprivation of a property right, "a party asserting a deprivation of

substantive due process must first establish a valid property interest within the meaning of the

Constitution . . . [and] must demonstrate that the defendant acted in an arbitrary or irrational

manner in depriving him of that property interest." *See Crowley v. Courville*, 76 F.3d 47, 52 (2d

Cir. 1996) (citation omitted). Assuming that Plaintiff can establish a property interest in his

certificate of occupancy, *see Zahra*, 48 F.3d at 681 ("[I]n certain circumstances, a party may

have a constitutionally protect[a]ble 'property interest' in a benefit that affects land use [such as a] certificate of occupancy . . . ."), he must still meet the very difficult test of showing sufficient arbitrariness. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (observing that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense" (internal quotation marks omitted)); *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.").[12]

The conduct alleged by Plaintiff simply does not rise to the level of being so outrageous to violate Plaintiff's substantive due process right. Plaintiff has not provided any support to substantiate a theory of deliberate harm by Defendant. The notion that Defendant knew or "should have known" that it lacked probable cause to commence and continue legal proceedings for a minor building violation hardly qualifies as "outrageously arbitrary," particularly in the absence of any evidence of direct animus toward Plaintiff. "[N]egligently inflicted harm is categorically beneath the threshold" for a substantive due process claim and even conduct exhibiting "deliberate indifference . . . demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." *Lombardi*, 485 F.3d at 82 (internal quotation marks omitted) (quoting *Lewis*, 523 U.S. at 849–50). Because Plaintiff has not pled any facts which could merit such condemnation, his substantive due process claim is dismissed. *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (noting that a substantive due process claim did not lie where the alleged actions "did not transgress the 'outer

---

[12] The Court may properly decide whether alleged conduct can satisfy this standard at the motion to dismiss stage. *See Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010) (affirming dismissal of substantive due process claim because the deprivation alleged was "hardly outrageous or shocking").

limit' of legitimate governmental action"); *Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir. 1999) (finding that an order to demolish plaintiff's buildings was nothing worse than "incorrect or ill-advised" and did not rise to the level of a substantive due process violation); *Longinott v. Bouffard*, No. 11-CV-4245, 2012 WL 1392579, at *5 (S.D.N.Y. Apr. 17, 2012) ("[T]he Supreme Court has repeatedly emphasized that only the most egregious official conduct can be said to violate substantive due process." (citing *Lewis*, 523 U.S. at 846)); *Yu Juan Sheng v. City of New York*, No. 05-CV-1118, 2009 WL 6871132, at *11 (E.D.N.Y. June 26, 2009) (finding claims associated with the seizure of an automobile not to be arbitrary or conscience-shocking as a matter of law), *adopted by*, 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); *see also Manza v. Newhard*, 470 Fed. App'x 6, 8-9 (2d Cir. 2012) (finding that the issuance of, and reliance upon, a legal opinion which led to termination of property owner's water service after a sixty-day period to pursue legal remedies could not be said to shock the conscience).

Plaintiff also raises a procedural due process claim. Procedural "[d]ue process requires only that the state afford a party threatened with a deprivation of property a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged." *Chase Grp. Alliance LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 151-52 (2d Cir. 2010); *Leroy v. N.Y.C. Bd. of Elections*, 793 F. Supp. 2d 533, 540-41 (E.D.N.Y. 2011) (same). Plaintiff here was afforded both notice and the opportunity for a trial and an appeal.[13] He also had avenues to challenge any deprivation of his property via an Article 78

---

[13] To the extent that Plaintiff alleges that the trial itself was marked by judicial irregularities, the Court has already explained that Defendant cannot be held liable for the acts of a village judge during the trial. Alternatively, Plaintiff's ability to contest, and prevail, in his appeal afforded him a meaningful opportunity to fairly challenge any trial irregularities. "The fact that a state proceeding is required by due process does not mean that Section 1983 provides a remedy for every error committed in the state proceeding. So long as state appellate remedies

proceeding, thus thoroughly undercutting Plaintiff's procedural due process claim. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) ("[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy."); *Ziebell v. City of Milford*, No. 08-CV-286, 2008 WL 4371971, at *4 (D. Conn. Sept. 18, 2008) (holding that because "plaintiffs obtained a timely appeal of the [zoning board] decision to the Superior Court[,] [t]he availability of mechanisms for appeal or post-deprivation remedies preclude[d] a later action of denial of procedural due process" (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988))); *cf. Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes.") (collecting cases); *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 168 (2d Cir. 2001) (holding where plaintiffs "could have brought an Article 78 proceeding to mandamus [New York State] Division [of Human Rights] officials to proceed expeditiously," there was no procedural violation); *Cais v. Town of East Haddam*, No. 09-CV-1511, 2011 WL 2838170, at *5 (D. Conn. July 14, 2011) (holding that "plaintiff's opportunity to contest the propriety of [the fire chief's] decision . . . through a common law action in state court constitutes meaningful post-deprivation process"). Accordingly, Plaintiff's procedural due process claim is dismissed. *See Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 381 (E.D.N.Y. 2001) ("The availability of such recourse, as a matter of law, precludes finding that the plaintiffs have stated a claim for the denial of their procedural due process rights.").

---

are available, a Section 1983 action is not an available vehicle for relief." *Chase*, 620 F.3d at 152-153.

### 6. Supplemental Jurisdiction

Defendant also seeks dismissal of Plaintiff's state law claims. However, this case remains in its initial stages, and the Parties have not yet proceeded to discovery. As all of Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (noting that the decision whether to exercise supplemental jurisdiction lies within the discretion of the district court); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction over state claims, because no federal claims survived a motion to dismiss); *Williams v. Berkshire Fin. Grp., Inc.*, 491 F. Supp. 2d 320, 329 (E.D.N.Y. June 11, 2007) (declining supplemental jurisdiction where no federal claims remained and case had not advanced beyond the pleading stage).

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is granted with respect to Plaintiff's federal law claims. The Clerk of the Court is respectfully directed to terminate the motion (Dkt. No. 16) and close the case.

SO ORDERED.

Dated:     White Plains, New York
             September 28, 2012

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

Service List (via ECF)

David A. Menken
Mitchell Ian Weingarden
Law Offices of Mitchell I. Weingarden, PLLC
81 Main Street
Suite 305
White Plains, NY 10601
(914)-686-4456
*Counsel for Plaintiff*

Kiera Meehan, Esq.
Steven C. Stern, Esq.
Sokoloff Stern LLP
355 Post Avenue, Suite 201
Westbury, NY 11590
(516) 334-4500
(516) 741-7676
sstern@sokoloffstern.com
*Counsel for Defendant*